Campbell, J.:
This suit was brought on a sheriff’s bond, to recover damages for the failure of an officer to enforce an execution against certain property sold under a chattel mortgage. In April, 1874, a mortgage was made by one Reed to *Satterlee, Blackwell & Co., of New York,' to secure seven hundred and fifty-two dollars and eighty-seven cents and interest. This was made upon “ a general stock of merchandise, consisting of dry goods, groceries, boots and shoes, hats and caps, clothing, Yankee notions, and such other stock as is usually kept in a country store, together with the Store fixtures and show cases not attached to the building, situated in Imlay City, Lapeer county, Michigan, in the store occupied by said Reed, on Third street.” The mortgage, which was payable in thirty, sixty, and ninety days, authorized the property to be seized (but not sold before default) in case the mortgagees should deem themselves insecure, or if the property should be sold out of the usual course of business, Reed being allowed to make sales in the ordinary way, and required to pay the debt as it fell due therefrom.
On the 18th of August, 1874, the mortgage having become due, Stephen Henry, who was a deputy sheriff, was employed on behalf of the mortgagees to take possession of the mortgaged property and enforce the mortgage. He took possession of the whole stock, which is claimed to have been changed by sales and accessions, and having been informed by Reed that there were some new goods, requested the mortgagor to point them out, which he refused to do. Henry gave notice of the mortgage sale, but in the meantime, before the day of sale arrived, had attachments and executions placed in his hands against Reed. When the time of sale came, he sold, first, goods enough to pay the mortgage, and then applied the proceeds of the remainder upon the executions, leaving some of the execution debts unpaid.
*31 The mortgage when made was at once duly filed with the town clerk, who in this instance was Reed himself. Reed received and properly endorsed it, without demanding or receiving his statutory fees. He omitted, however, to make the entries which he should have done, and did not put the document in in the files of mortgages where it was customary to place such instruments, hut left it in another pigeon-hole.
*The plaintiffs claimed to recover on several grounds: First, because of the defective filing; second, because of the permission given to the mortgagor to sell, and his action thereunder; and, third, because goods were sold on the mortgage which were not included in it.
The filing was all that the law required to be done by the party. The statute simply requires the mortgagee to cause it tobe “filed.” When filed the clerk is required on payment of his fees to endorse the date of reception, and deposit the instrument in his office for inspection, and to enter the names of the parties in an alphabetical index.— Q. F, §§ 4708-7-8. This mortgage was received and endorsed by the clerk without demanding his fees, and without any intention of demanding them. It in no way concerns any one else whether he is paid or not. And if he cho'oses to give credit for fees or to remit them, it cannot invalidate securities which he has accepted and filed. No one is 'bound under the terms of this statute to pursue any further investigations to see whether he does his duty. The statute seems to have required the deposit, not merely for notice to creditors and purchasers, but chiefly to show the transaction to have been actual and genuine, and to prevent secrecy and imposition, and to remove the presumption otherwise arising against good faith. It was to permit such mortgages to be given by men in business without requiring them to suspend their business or give up possession of their stock in trade, on which they rely to raise the amount of their debts.
The authority left in the mortgagor to dispose of his goods In the usual way has been maintained repeatedly by this court, and is not open to controversy.— Gay v. Bidwell, 7 Mich. R., 519; Oliver v. Eaton, 7 Mich. R., 108; Leland v. Collver, 34 *32 Mich. R., 418. Much of the doctrine concerning the effect of such permission depends on a theory which is not law in this state. Under the decisions of this court mortgaged chattels do not cease to belong to the mortgagor until some steps are taken to *end his rights by the enforcement of the mortgage. The mortgage is a mere security to the mortgagee, and not a transfer of title. The mortgagor, therefore, while remaining in possession, is not the agent of the mortgagee, but owner of encumbered property. Permission to sell at retail is permission to pass title free from encumbrance, but it cannot be regarded in any sense as a payment to himself as agent, by himself as agent, of a debt due by himself as principal. His debt remains unpaid until it is paid to the creditor, who has simply released a portion of the goods from his mortgage, and incurred so much risk as such a release creates.
There is no pretense or showing of fraud, and the only question really open is, whether the deputy sheriff applied moneys on the mortgage which should have been applied on the execution in favor of Farrington, Campbell & Co.
Possession had been taken under the mortgage before either attachments or executions were levied. The mortgagor had refused to point out what goods were in stock before, and what had been purchased after his mortgage,and it appears there were no other means of distinguishing them. Under a mortgage which gives a right in the mortgagee to take possession, there is a corresponding duty in the mortgagor to deliver it, and this necessarily involves a duty of identifying it. If the mortgage debt had been the only debt which he owed, the refusal to enable the mortgagees to select their property from that with which he had mingled it would preclude him from complaining of the seizure of the whole. While it is not likely there was any such confusion of goods as to absolutely destroy their separate identity, there is nothing in the finding which can enable us judicially to say there may not have been. But if they could have been separated, it would probably have been impossible or very difficult without the aid of private marks and invoices which the mortgagor could have resorted *33 to, but which no one else could have obtained without his ^'consent. His refusal, therefore, even in the case of ordinary goods, would really produce the same mischief, and should hold him in the same way as if he had produced a confusion of articles such as have usually been referred to in controversies concerning mixtures. There can be no such rule in the law as must necessarily be confined to particular commodities. The rule must be eo-extensive with the mischief, and where a person has willfully destroyed all means of identification, he must be responsible for the natural consequences.
The mortgage before us does not in terms contemplate a lien upon future acquisitions; but it does contemplate that the stock on hand and all its proceeds shall be bound. A very strong equity, therefore, would arise in favor of the .mortgagee as against the future additions as the result of the same business and as practically substituted for the goods sold. But that equity would not prevail against a levy made before it had become no more than a general equity. If, however, by valid and formal agreement or otherwise, it had become actually attached to the goods before levy, then it would prevail.
The laws of this state allow a debtor to prefer one creditor to another, and to use any of his property in the payment or security of his honest debts in such order as he may select. Nothing but a distinct lien upon property can prevail against such disposal. A levy will prevail over subsequent transactions, but it cannot invalidate prior dispositions in favor of honest creditors and in violation of no statute or legal rule.
Mr. Reed could lawfully have delivered his new goods to the mortgagees by way of pledge, or could have mortgaged them. What he could have done voluntarily is no more valid against him than what binds him by estoppel, and in the present case the mortgagees had a perfect right to enforce them mortgage against all of the property in controversy before there was any other lien upon it. The levies *were all subject to it, and the moneys were applied as they should have been.
*34 The rulings in pursuance of these principles were correct, and the judgment must be affirmed, with costs.
The other justices concurred.