GRAND VICTORY THEATRE CO. *v.* SOLOMON.

1. CORPORATIONS—MORTGAGES—FRAUD—EVIDENCE—SUFFICIENCY.

In a suit by a corporation to set aside a mortgage on its property on the ground that it was fraudulently given, evidence showing that the proceeds were used to pay corporate debts and to settle and discharge two mortgages which were valid liens against the property, and that it has not been damaged or defrauded by any act of defendants, but that it has been greatly benefited by its dealings with them, *held*, to justify a decree dismissing the bill.

2. SAME—CORPORATE BUSINESS—ULTRA VIRES.

Where the necessities of a corporation required that it borrow money to save its property from foreclosure and to enable it to continue the business in which it was engaged, the making of a loan and mortgage for such purpose was corporate business, although incidentally two of its directors were thereby relieved of personal liability in the original mortgages, and, therefore, was not *ultra vires*.

3. SAME—FRAUD—ISSUE PRESENTED.

The issue of fraud presented by the pleadings and proofs, *held*, to present a matter between plaintiff and two of its directors, rather than between plaintiff and defendants.

4. SAME—MORTGAGES—DUTY OF ONE LOANING TO CORPORATION.

Where defendants were loaning money to a corporation and taking a mortgage on its property as security, they were not required to go further than to inquire into the authority of the corporation to make the loan and give the security.

5. SAME—CONSENT OF STOCKHOLDERS—COMPLIANCE WITH STATUTE.

Where the loan and mortgage were authorized at a meeting of the board of directors, and the directors voting in the affirmative represented more than two-thirds of the capital stock, there was a sufficient compliance with Act No. 84, Pub. Acts 1921, requiring the consent by the holders of

not less than two-thirds of the capital stock, although no formal meeting of the stockholders was held.

6. SAME—FILING CONSENT OF STOCKHOLDERS NOT NECESSARY TO VALIDITY OF MORTGAGE.

Compliance with the statutory requirement that the consent of the stockholders to the mortgage be filed and recorded with the instrument, *held*, not necessary to its validity, as between the parties to the mortgage, since the purpose of said requirement is to apprise subsequent incumbrancers of the amount in which the stockholders have authorized the property of the corporation to be incumbered.

7. SAME—BONUS—USURY—TENDER OF AMOUNT DUE—NO DEDUCTION POSSIBLE WHERE EVIDENCE INDEFINITE.

Where no tender of principal and interest due has been made by plaintiff, and the evidence as to the amount of a claimed bonus is indefinite, the court is unable to make any deduction from the amount due on the mortgage because of the so-called bonus.

Appeal from Wayne; Collingwood (Charles B.), J., presiding. Submitted June 7, 1923. (Docket No. 70.) Decided October 1, 1923.

Bill by the Grand Victory Theatre Company against Sam Solomon and another to set aside a mortgage. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Robert M. Brownson (Stephen V. Riffel*, of counsel), for plaintiff.

*Carl K. Rix (Fritz L. Radford*, of counsel), for defendants.

McDONALD, J. This is an appeal from a decree dismissing plaintiff's bill which was filed for the purpose of setting aside a mortgage of $66,000 covering its property on Grand River avenue, in the city of Detroit. On the 11th day of March, 1920, Henry C.

Keywell was the owner of the real estate in question on which were buildings used in operating a motion picture theatre.   On that day he and his wife executed two mortgages on the property, one for $45,000 to the other for $5,000 to the Metropolitan Investment Company.   After these mortgages were given, Keywell formed a partnership with Daniel Fidler and Abram Ackerman, and together they carried on the business United States Mortgage Bond Company, Ltd., and the under the assumed name of Grand Victory Theatre Company.   Though Fidler and Ackerman do not seem to have had any title to the property, on September 30, 1920, they joined with Keywell in a third mortgage for $10,000 to James H. Means and Howard C. Wade, as trustees.   On March 17, 1921, the three partners incorporated the present corporation, which took over the assets of the copartnership.   The capital stock was divided equally among them.   Keywell and wife conveyed the property to the corporation by warranty deed subject to the three existing mortgages.   Fidler and Ackerman gave quitclaim deeds. On June 28, 1921, the mortgages to the Metropolitan Investment Company and to Means and Wade, trustees, were in default, and to settle and discharge them the corporation borrowed $10,800 from Phil Solomon, Max Solomon, and Sam Solomon, the two latter being the defendants herein.   To secure this loan a mortgage was given subject to the first mortgage of $45,000 held by the United States Bond Company, Ltd.   On the 25th day of November, 1921, the $45,000 mortgage was in process of foreclosure.   To settle and discharge this mortgage and that of $10,800, and to pay certain unsecured debts, a further loan was secured from the defendants and a new mortgage given to them for $66,000.   The plaintiff claims that this mortgage is invalid, that it was given to pay the individual debts of the president and secretary, and was

therefore fraudulent, that it was without consideration and was not consented to by the holders of two-thirds of the capital stock of the corporation, nor authorized by vote at a meeting of the stockholders called for that purpose, as required by statute. The defendants denied these claims and on the issue thus presented the circuit judge sustained the validity of the mortgage and entered a decree dismissing the plaintiff's bill. From this decree the plaintiff has appealed.

We are not well impressed with the equity of the plaintiff's position in this case. It has received and retained the full benefit of the money loaned by the defendants. It has used the proceeds to pay corporate debts, such as insurance and taxes, and to settle and discharge two mortgages which were valid liens against its property. It has not been damaged or defrauded by any act of the defendants, but has greatly benefited by its dealings with them. It is true that in discharging the liens against the property, it thereby relieved two of the directors from personal liability to the mortgagees in the original mortgages, but that was no concern of the defendants. If the loan and mortgage were regularly and legally authorized they are not to be deprived of their security because the corporation thereafter misapplied the proceeds. There was, however, no misapplication. It is immaterial that these liens did not represent corporate debts; they were valid and could be enforced against the property of the corporation. They were being enforced, and the necessities of the business therefore required that the corporation should borrow this money and give this security to save its property from foreclosure, and to enable it to continue the business in which it was engaged. These facts distinguish this case from any of those cited by counsel. The making of this loan and mortgage was corporate business and was not to pay individual debts of the officers. It was

therefore not *ultra vires.*  We agree with counsel for
the defendants that the issue of fraud presented by
the pleadings and proof is a matter between the plain-
tiff and the two directors who, for some undisclosed
reason, have not been made parties to this suit.
Under the circumstances of this case the defendants
were not required to go farther than to inquire into
the authority of the plaintiff to make the loan and to
give a mortgage on its property as security.  This
brings us to the second proposition discussed by coun-
sel for the plaintiff in his brief, viz., that the mortgage
is invalid because no consent therefor was obtained
from the stockholders as provided in Act No. 84,
Pub. Acts 1921, pt. 2, chap. 2, subd. 4, § 12 (Comp.
Laws Supp. 1922, § 9053 [63]), which reads as
follows:

"SECTION 12.  Every stock corporation shall have
the power to borrow money and contract debts, when
necessary for the transaction of its business, or for
the exercise of its corporate rights, privileges or
franchises, or for any other lawful purpose of its
incorporation; and it may issue and dispose of its obli-
gations for any amount so borrowed, and may mort-
gage its property and franchise to secure the payment
of such obligations, or of any debt contracted for such
purposes.  Every such mortgage, except purchase
money mortgages, shall be consented to by the holders
of not less than two-thirds of the capital stock of the
corporation, which consent shall be given in writing
or by vote at a meeting of the stockholders called for
that purpose, and upon the same notice as that required
for the annual meetings of the corporation; and a cer-
tificate under the seal of the corporation that such con-
sent was given by the stockholders in writing, or that
it was given by a vote at a meeting as aforesaid, shall
be subscribed and acknowledged by the president or
vice-president and by the secretary or an assistant
secretary of the corporation and shall be filed and re-
corded with the instrument.  *Provided, however,*
That the stockholders may in the articles, or in an
amendment thereto, confer general authority upon the

directors to mortgage the property of the corporation, in which case each such mortgage shall contain a reference to such authority.    When authorized by like consent, the directors under such regulations as they may adopt, may confer on the holder of any debt or obligation, whether secured or unsecured, evidenced by bonds of the corporation, the right to convert the principal thereof, after two and not more than twelve years from date of such bonds, into stock of the corporation; and if the capital stock shall not be sufficient to meet the conversion when made, the stockholders shall, from time to time, authorize an increase of capital stock sufficient for the purpose in the manner hereinbefore prescribed."

The mortgage in question was authorized by the board of directors without action by the stockholders, a proper practice prior to the enactment of the incorporation act of 1921.    It is claimed by counsel for the defendants that in the new corporation act the legislature provided a saving clause which permits existing corporations to follow the former practice in mortgaging its property.    The provision (pt. 5, chap. 3, § 2 [Comp. Laws Supp. 1922, § 9053 (176)]) is as follows:

"Section 2. All such corporations, whose act of incorporation is repealed by this act, heretofore organized and incorporated under or subject to the laws of this State, shall hereafter be subject to the provisions of this act without formal reorganization hereunder; but each such corporation shall have, under its existing charter or corporate franchise, all of the powers, rights, privileges and immunities granted and conferred upon it by the law under which such corporation was incorporated, and notwithstanding such law may be repealed by this act; and nothing in this act contained shall be taken or construed to limit, restrict, or modify any such corporation in the exercise of its existing powers, rights, privileges or franchises, or as working a change upon its manner of operating, or as imposing any new mode of operation upon any such existing corporation.    In all cases the charter, articles

and by-laws of each such corporation as existing at the time this act takes effect may be altered or amended to include any right, power or privilege or as to any matter, subject or thing provided for in such law under which such existing corporation was organized, and no such amendment or alteration shall be deemed to be unlawful because inconsistent with or not expressly covered by the provisions of this act: *Provided, however,* That upon reorganization, or upon renewing any corporate term, such reorganization and such renewal shall be accomplished only in the manner, and under the limitations and restrictions imposed by the provisions of this act."

We may pass the question as to whether the legislature intended to preserve the existing practice, except as to corporations incorporated under the new act, because the undisputed evidence shows that there was a substantial compliance with the provisions of that act as to the consent of the stockholders. The mortgage was signed by Henry C. Keywell as president and Daniel Fidler as secretary, and was authorized at a meeting of the directors at which they were present voting in the affirmative. Of the 19,700 shares of stock outstanding, Keywell owned 10,617 shares, and Fidler owned 4,655 shares, making a total of 15,272 shares, more than two-thirds of the stock. As this was more than the statutory amount required for the authorization of the mortgage, their assent to the mortgage as expressed in its execution was a sufficient compliance with the statute. 14A C. J. § 2662, page 665.

The statute requires that the consent of the stockholders shall be filed and recorded with the instrument.

"The purpose of the statutory provision requiring filing of the stockholders' assent is to apprise subsequent incumbrancers of the amount in which the stockholders have authorized the property of the corporation to be incumbered." 14A C. J. § 2663, p. 665.

As between the parties to the mortgage a compliance with this provision is not necessary to its validity.

The plaintiff claims that in any event it is entitled to a reduction of $7,589.97 from the mortgage for the reason that there was a bonus of that amount included in the $66,000. This is not a case where the court can declare the entire interest void and there has been no tender. The exact amount of the bonus is a matter of presumption rather than of proof. In view of the indefinite character of the evidence, and of circumstances which require a tender of the principal and legal interest, we are unable to make any deduction from the amount due on the mortgage because of the so-called bonus.

The decree of the circuit judge is affirmed, with costs to the defendants.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.