LOUPEE *v.* MICHIGAN CENTRAL RAILROAD CO.

1. CORPORATIONS — CHATTEL MORTGAGES — ONE CLAIMING TO BE OWNER OF MAJORITY OF STOCK HAS BURDEN OF PROOF.
   A company claiming to own practically all of the stock of a corporation at the time the latter executed a chattel mortgage which it claims is invalid under Comp. Laws Supp. 1922, § 9053 (63), because it did not give its assent thereto, has the burden of showing that it was a stockholder in the corporation at the time the mortgage was executed.

2. SAME—PURPOSE OF REQUIRING CONSENT OF TWO-THIRDS OF STOCK TO EXECUTION OF MORTGAGE IS TO PROTECT STOCKHOLDERS.
   The purpose of Comp. Laws Supp. 1922, § 9053 (63), requiring the consent of two-thirds of the capital stock of a corporation to the execution of a mortgage by it is to protect the stockholders.

3. REPLEVIN—ONE ASSERTING AFFIRMATIVE DEFENSE HAS BURDEN OF PROOF.
   Where mortgagees seized goods under replevin process,

On validity of chattel mortgage on subsequently acquired property, see 5 R. C. L. 404; 1 R. C. L. Supp. 1389; 6 R. C. L. Supp. 302; 7 R. C. L. Supp. 149.

and the defense was that the mortgage was invalid, said defense was an affirmative one, and the defendants had the burden of proof.

4. SAME—DEFENDANTS FAILING TO SUSTAIN BURDEN OF PROOF NOT ENTITLED TO DIRECTED VERDICT.

Where defendants had the records in their possession and could have shown that the persons executing the mortgage were not the owners of two-thirds of the capital stock as required by Comp. Laws Supp. 1922, § 9053 (63), but failed to do so, they were not entitled to a directed verdict.

5. CHATTEL MORTGAGES—AFTER-ACQUIRED MATERIAL COVERED.

Where a chattel mortgage covered material to be used in manufacturing washing machines, which was to be kept up to the value of $5,000, the mortgage covered the stock afterward acquired by the mortgagor and put into the plant.

6. CONFUSION OF GOODS—LIEN COVERS MASS WHERE MORTGAGOR RESPONSIBLE FOR CONFUSION.

Confusion of goods by the mortgagors, rendering it impossible for the mortgagees to ascertain the articles covered by their mortgage out of the mass, subjected the mass to the operation of the lien, at least in the absence of clear identification by the mortgagors.

Error to Cass; Warner (Glenn E.), J. Submitted April 10, 1928. (Docket No. 71, Calendar No. 33,570.) Decided June 4, 1928.

Replevin by Sherman L. Loupee, as trustee for himself and others against the Michigan Central Railroad Company and others for the possession of certain mortgaged property. Judgment for plaintiffs. Defendants bring error. Affirmed.

*Asa K. Hayden,* for appellants.

*James H. Kinnane, U. S. Eby,* and *C. M. Lyle,* for appellees.

FEAD, C. J. This is an action of replevin. On
243—Mich.—10.

October 29, 1925, the Farrell Products Company of Dowagiac, manufacturers of washing machines, was recognized by its stockholders to be insolvent. Thomas J. Casey of Chicago was president and sales manager. Plaintiffs were stockholders. The corporation was obligated on notes to banks for $10,800, upon which Casey and plaintiffs were indorsers. An agreement was made under which certain stockholders, representing 939 of the 1,000 shares of the corporation, deposited their indorsed certificates of stock with plaintiff Loupee as trustee, to be delivered to Casey when the latter should furnish evidence that he had organized a new corporation, had issued to and deposited with Loupee a certificate of stock therein to the amount of one-third of the number of shares deposited with Loupee by the stockholders of the Farrell Products Company, and had shown that the indorsers on the notes of the corporation had been fully released from any further liability thereon. Loupee was to distribute the shares in the new corporation among the depositing stockholders. The transaction was to have been accomplished in 30 days from the date thereof. Counsel later conceded that 991 shares were delivered to Casey under this agreement.

Casey organized the new corporation, the Tri-Plex Washing Machine Corporation, in November or December, 1925. The agreed allotment of Tri-Plex stock was delivered to Loupee, but the testimony did not show when.

Without waiting for the fulfillment of the agreement, and without apparent authority, Loupee, on November 28, 1925, delivered the certificates, deposited with him as trustee, to Casey. Casey testified that he handed the certificates to the secretary of the Tri-Plex company. They were placed in the vault and he did not know whether or not new certificates had been issued to the Tri-Plex company. All of the records of both

concerns were in the possession and charge of Casey at Chicago, but were not produced at the trial.

In February, 1926, the Farrell Products Company executed to Loupee, as trustee for the indorsers on the notes, a chattel mortgage, covering all its stock, raw materials, merchandise, finished products and machinery and the land contract of the factory site. The mortgage was signed by Casey as president, and H. C. Coble as secretary, of the Farrell Products Company. Both officers attached affidavits thereto that it had been executed by authority of the board of directors and that the seal affixed thereto was the corporate seal of the corporation, and each acknowledged it to be the free act and deed of the corporation. Some of the notes were renewed after the mortgage was given.

It is apparent that this mortgage was given in some sort of modification of the agreement under which the stock of the Farrell Products Company had been deposited with Loupee. The consent of the *cestui que trustent* to the modification was not shown. When the stock was delivered to Casey, an arrangement was made by which the directors of the Farrell company each retained a share of stock in order to continue the affairs of the corporation. Loupee and Coble testified that, with Casey present, the board of directors, about November 30th, authorized the chattel mortgage and that the delay in executing it was caused by Casey. Objection was made to the testimony on the ground that the record of the board of directors was the best evidence. It was shown that Casey had the records at Chicago, but their production was not demanded by plaintiffs. Casey denied the meeting.

About the time the chattel mortgage was executed, the Farrell Products Company, through Casey, its president, made an arrangement with the Tri-Plex Washing Machine Corporation, through Casey, its president, by which the former concern built machines

and billed them to the latter at $55 each, the latter furnishing money for the pay roll and also providing some materials.    Invoices showing materials so advanced to the amount of $793.30 were introduced in evidence, but the articles were not identified.

On August 11, 1926, Casey, without notice to the mortgagees or the banks, directed his brother, who was acting as superintendent of the Farrell Products Company at Dowagiac, to ship all the property of the Tri-Plex corporation to Chicago.    The goods were taken out of the Farrell factory, loaded on cars between 11 p. m. and 2 a. m., and the shipment was seized under replevin process issued upon claim that the property was covered by the Farrell chattel mortgage.    Certain of the goods were afterwards released to the Tri-Plex company.    Some of those held are admittedly the property of the Farrell Products Company.

The court held the mortgage was valid and submitted the cause to the jury on the sole question whether the property seized under the writ was the property described in the mortgage and was in the Farrell factory when the mortgage was given.    Plaintiff had verdict and judgment.

Defendants at the close of the plaintiffs' case and of the whole testimony moved for a directed verdict, and, after verdict, made a motion for a new trial.    They filed no exceptions to the denial of the latter motion. Their other assignments of error cover only the refusal to direct in their favor and rulings on admissibility of testimony.

The principal question is upon the validity of the chattel mortgage.    Defendants claimed it was invalid because, at the time it was executed, the Tri-Plex company was the owner of practically all of the shares of the Farrell Products Company, it gave no consent to the execution of the mortgage, and, consequently, the mortgage was executed without the consent of two-

thirds of the capital stock of the mortgagor corporation as required by Act No. 84, Pub. Acts 1921, pt. 2, chap. 2, subd. 4, § 12, as amended by Act No. 20, Pub. Acts 1921, First Ex. Sess. (Comp. Laws Supp. 1922, § 9053 [63]). Plaintiffs invoked the rule in *Grand Victory Theatre Co.* v. *Solomon*, 224 Mich. 451, that the assent of the statutory amount of stock, represented and expressed in the execution of the instrument, was a sufficient compliance with the statute; and, upon the claim that Casey was the owner of 991 shares of the Farrell stock when the mortgage was executed, contended that it was valid because he signed it.

The purpose of the statute is to protect stockholders. It was incumbent on the Tri-Plex company, which here raised the question of invalidity, to show that it was a stockholder in the Farrell Products Company when the mortgage was given. The corporate records were not produced to show whether or when the Farrell stock was transferred to the Tri-Plex corporation. The fact of transfer rested solely on Casey's oral testimony, which was uncertain, and, at most, raised a question of fact whether the Tri-Plex company was a stockholder of the Farrell concern when the mortgage was executed.

The mortgage was executed by the usual officers, the president and secretary of the Farrell Products Company, and carried their affidavits of authority. The claim that the mortgage was invalid was an affirmative defense. 14A C. J. p. 709; *Earl* v. *National Metallurgic Co.*, 77 N. J. Eq. 17 (76 Atl. 555). The defendants had the burden of proving that the persons executing the mortgage, Casey and Coble, were not the owners of two-thirds of the Farrell stock, either directly or through ownership of Tri-Plex shares. Having the complete record evidence at their command, the defendants failed to disclose the facts.

The defendants were not entitled to a direction of verdict on the ground that the mortgage was invalid.

The testimony attempting to identify the property seized under the writ of replevin as the property covered by the mortgage and on hand when it was executed, was not satisfactory. However, the instrument provided that washing machines manufactured from the stock and materials covered by the mortgage could be sold in the due course of trade and that the mortgagor "shall keep stock on hand equal in volume and value to what it now is, which value is hereby fixed at the sum of $5,000." The mortgage covered the stock afterward acquired by the mortgagor and put into the plant. *Cadwell* v. *Pray*, 41 Mich. 307; 11 C. J. p. 506.

The testimony was that the property taken under the writ was the same property removed by defendants from the Farrell plant and was of the nature covered by the mortgage. Some of it was positively identified as Farrell property. Defendants claimed that nearly all of it belonged to the Tri-Plex company and that they were entitled to a direction of verdict because plaintiffs did not make sufficient identification of the Farrell stock. The character of most of the goods made identification of specific stock impossible. The goods were put into the Farrell plant upon order of Casey, who, as president of the Farrell company, had the duty to maintain the mortgaged stock to a $5,000 value. The general mixture of the property in a mass which prevented identification resulted in a confusion of goods for which Casey and the Tri-Plex company were responsible, because they together, or one of them, owned the mortgagor and dominated its affairs. The confusion caused by them, rendering it impossible for the mortgagees to ascertain the articles covered by their mortgage out of the mass, subjected the mass to the operation of the lien, at least in the absence of clear identification by defendants of the

Tri-Plex property.  12 C. J. p. 497; *People, for use of Farrington,* v. *Bristol,* 35 Mich. 28.  The defendants made no such identification of articles.

In the view we take of the situation, the defendant Tri-Plex company failed to sustain the burden of proof that the mortgage was invalid, and, having caused a confusion of goods, failed to make proper separation and identification of its property from the mass covered by the mortgage.  Hence the plaintiffs would have been entitled to a directed verdict upon the record. The same result was reached by the verdict of the jury.  The defendants were not entitled to a directed verdict, and, under their assignments of error, they raised no issue that the case presented a question for the jury.

By this ruling the assignments relative to the admission of testimony become of no consequence and need not be discussed.

The judgment is affirmed.

NORTH, FELLOWS, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.