WELLOCK v. COWAN.

1. CONFUSION OF GOODS—CHATTEL MORTGAGES—ENTIRE STOCK MAY
   BE SEIZED WHERE MORTGAGOR REFUSES TO IDENTIFY.
   Where the description of the property in a chattel mortgage
   covering a stock of hardware, harness, and implements was
   general, and the mortgagors refused to identify property
   claimed to have been acquired by them after execution of
   the mortgage and mingled with the mortgaged property, and
   the officer executing the writ of replevin was unable to identify
   the property covered, he was justified in seizing the entire
   stock.

2. SAME—COUNTERCLAIM—MORTGAGOR NOT ENTITLED TO RECOVER
   VALUE OF GOODS MINGLED WITH MORTGAGED STOCK.
   Mortgagors who refused to identify goods mingled with a mort-
   gaged stock of goods, and who made no demand for their
   return after they were seized by the officer executing a writ
   of replevin, may not recover their value as upon a sale of
   them to the mortgagee.

Error to Sanilac; Wixson (Walter S.), J., presid-
ing. Submitted January 16, 1929. (Docket No. 127,
Calendar No. 33,640.) Decided March 28, 1929.

Replevin by Robinson Wellock, trustee, against
Adam W. Cowan and Philip Binkle, copartners as
Cowan & Binkle, for possession of a stock of mer-
chandise. Judgment for plaintiff. Defendants
bring error. Affirmed.

C. F. Gates, for appellants.

Henry Baird and Alex. B. Simonson, for appellee.

SHARPE, J. The facts in this case were stated at
some length on a former review in this court (228

Mich. 575), and need not be here repeated. It was then held that "the court should have instructed the jury that Cowan signed the bill of sale and as to plaintiff Cowan & Binkle were partners." A new trial has been had, and defendants now seek review by writ of error.

The bill of sale, given as a security however, covered the following property:

"All the stock of hardware, harness and implements belonging to us and now in our possession in our place of business in the village of Deckerville, Michigan."

The plaintiff was present with the officer at the time the writ was executed by him. It is the claim of the defendants that the sheriff at that time took possession of and subsequently turned over to plaintiff not only the personalty covered by the bill of sale, but a large quantity of goods then in the possession of the defendants which had been acquired by them after the bill of sale was executed. In view of the instructions of the court to the jury, it seems well to here insert the testimony of what occurred at the time the writ was executed. The plaintiff, after testifying that offers of compromise were made by him and refused and the inventory made, said:

"Mr. Cowan said he would have to take it up with his attorney, and he called Mr. Gates, and Mr. Gates came there and told me, 'Nothing doing; take the goods; get them out of the store.' I said, 'Well, I think I own the store. I have a deed to it, also a mortgage at the bank I represent.' He said, 'You haven't proved it. Take the goods out.' There was nothing left but to take the goods, which I took them out."

This statement of the attorney was made in the presence of the defendant Cowan. The officer testified:

"*Q.* Now relate that conversation, as you recall it, or the substance of it, if you can't remember the exact words, as to what items the defendant insisted you should leave out of the seizure?

"*A.* Well, there was—he wanted his books, the safe and I believe his tools that he did the harness repairing with, and parts of leather that had been cut up being prepared for the fixing of harness, and the harness that were in there for repair.

"*Q.* And on his request there, did you leave these articles out of your seizure?

"*A.* We did.

"*Q.* Did you leave out of your seizure every article that you were requested to leave out by the defendant Cowan?

"*A.* Yes.

"*Q.* Then, Mr. Graham, all the items that you took under your writ there—there was no objection from the defendant—whether or not there was any objection from the defendant, Cowan, any claim that they did not go with the stock of goods? Was there any such objection or such claim from Cowan?

"*A.* No, sir."

The trial court, after alluding to this testimony and the intermingling of the after-acquired goods with those in the stock when the bill of sale was given, instructed the jury:

"And if you find in this case that the defendants, and it appears that they have had sole charge of the stock from the time of the giving of the bill of sale, mingled the new goods with those originally in stock and they merged in such a manner as to render them indistinguishable, and either refused, or declined or omitted to point out and separate them under the circumstances to which I have referred, prior to the

seizure by the sheriff, and having been given an opportunity so to do, it would thereupon become the right of the mortgagee, the plaintiff in this suit, to take the entire stock, through the medium of the sheriff, acting under his writ.''

The description in the mortgage was general. Neither the officer nor the plaintiff, who accompanied him, could tell what, if any, goods had been added to the stock of the defendants. After making an inventory thereof, the officer left all that were claimed by the defendant Cowan. What he took was without objection, and it may well be said at the request or direction of Cowan's attorney.

Upon the trial the defendants offered proof that a very considerable part of the goods taken under the writ were not in the stock at the time the mortgage was given. Their counsel insisted that the mortgage was determinative of the rights of plaintiff, and that, waiving return, they were entitled to a judgment for the value of those taken not included therein.

The testimony above quoted justified the instruction given, and, if found to be true, warranted the verdict rendered. If goods had been added to the stock after the mortgage was given, and had become so intermingled that neither the officer nor the plaintiff could separate them, a plain duty devolved upon the defendants to do so. The inventory was shown to Cowan, and it would have been an easy matter for him to designate thereon such goods as he claimed were not included in the mortgage. He declined to do so. Neither did he make demand upon plaintiff for a return of them. He now seeks to recover their value as upon a sale of them made to plaintiff. This the law will not permit him to do. Neither the

rights of other creditors nor subsequent purchasers are here involved.

In *People, for use of Farrington,* v. *Bristol,* 35 Mich. 28, a deputy sheriff, under employment of a mortgagee, took possession of an entire stock of goods, after request to the mortgagor to point out any new goods added to the stock after the mortgage was given and his refusal to do so. It was therein said:

"Under a mortgage which gives a right in the mortgagee to take possession, there is a corresponding duty in the mortgagor to deliver it, and this necessarily involves a duty of identifying it. If the mortgage debt had been the only debt which he owed, the refusal to enable the mortgagees to select their property from that with which he had mingled it would preclude him from complaining of the seizure of the whole. While it is not likely there was any such confusion of goods as to absolutely destroy their separate identity, there is nothing in the finding which can enable us judicially to say there may not have been. But if they could have been separated, it would probably have been impossible or very difficult without the aid of private marks and invoices which the mortgagor could have resorted to, but which no one else could have obtained without his consent. His refusal, therefore, even in the case of ordinary goods, would really produce the same mischief, and should hold him in the same way as if he had produced a confusion of articles such as have usually been referred to in controversies concerning mixtures. There can be no such rule in the law as must necessarily be confined to particular commodities. The rule must be co-extensive with the mischief, and where a person has willfully destroyed all means of identification, he must be responsible for the natural consequences."

In referring to the rights of other creditors, the court said:

"Mr. Reed could lawfully have delivered his new goods to the mortgagees by way of pledge, or could have mortgaged them. What he could have done voluntarily is no more valid against him than what binds him by estoppel, and in the present case the mortgagees had a perfect right to enforce their mortgage against all of the property in controversy before there was any other lien upon it."

This holding was cited with approval in *Loupee* v. *Railroad Co.*, 243 Mich. 144, where there was such a mingling of the goods as "made identification of specific stock impossible." It was said:

"The confusion caused by them, rendering it impossible for the mortgagees to ascertain the articles covered by their mortgage out of the mass, subjected the mass to the operation of the lien, at least in the absence of clear identification by defendants of the Tri-Plex property."

It may be noted that the Tri-Plex company was in no way connected with the mortgage debt.

In *Gibson* v. *McIntire,* 110 Iowa, 417 (81 N. W. 699), the following from Jones, Chat. Mortg. § 482, was quoted with approval:

"When new goods have been added to a mortgaged stock, it is the duty of the mortgagor to identify the latter upon the mortgagee's taking possession. Although there be no such confusion as to absolutely destroy their separate identity, yet, if they cannot be separated without the mortgagor's aid, the same mischief would be produced as that which follows a confusion of goods. If the mortgagor refuses to point out the mortgaged goods, so as to enable the mortgagee to select them from others with which the mortgagor has mingled them, the lat-

ter cannot complain if the mortgagee seize the whole.''

The court adds:

''When the original taking of the goods is not wrongful, demand is necessary before the commencement of an action, in order to make that possession wrongful. This is elementary law, and needs no fortification by the citation of authorities.''

The following from *Hart* v. *Ten Eyck,* 2 Johns. Ch. (N. Y.) 62, 108, was quoted with approval in *Smith* v. *Township of Au Gres,* 80 C. C. A. 145, 150 Fed. 257 (9 L. R. A. [N. S.] 876):

''If a party having charge of the property of others so confounds it with his own that the line of distinction cannot be traced, all the inconvenience of the confusion is thrown upon the party who produces it, and it is for him to distinguish his own property, or lose it.''

In *Adams* v. *Wildes,* 107 Mass. 123, wherein the rights of the defendant as purchaser from the mortgagor were involved, it appeared that the goods purchased to replenish the stock had been ''so purposely or carelessly mingled by him with the other mortgaged goods as not to be distinguishable.'' It was held:

''It was the duty of the defendant, as he only succeeded to Gay's title subject to the mortgages, to identify the specific articles which were not embraced in them. This the case finds he failed to do.'''

The judgment is affirmed.

NORTH, C. J., and FEAD, FELLOWS, WIEST, Mc-DONALD, and POTTER, JJ., concurred. CLARK, J., did not sit.