TIMMER *v.* CRIMMINS.

1. CHATTEL MORTGAGES—CANCELLATION OF INSTRUMENTS—RENEWAL AFFIDAVIT—BANKRUPTCY—STATUTES.

Corporation's trustee in bankruptcy is not entitled to cancellation of corporate chattel mortgage because first renewal affidavit did not comply with statute, where subsequent ones did, and no creditors represented by trustee claim as purchasers or mortgagees of mortgaged property or show that they have been prejudiced by said failure to comply with statute (3 Comp. Laws 1929, §§ 13427, 13428).

2. CORPORATIONS—EXPIRATION OF FRANCHISE—CHATTEL MORTGAGES—
BANKRUPTCY—EQUITY.

Corporation's trustee in bankruptcy is not entitled to cancella-
tion of corporate chattel mortgage executed two years after
expiration of corporate franchise and nearly three years be-
fore bankruptcy, where all parties acted in good faith, con-
sideration went into corporation's business, and to grant can-
cellation would be highly inequitable.

3. SAME—CONSENT OF STOCKHOLDERS—SUBSTANTIAL COMPLIANCE
SUFFICIENT.

Purpose of statute requiring that corporate chattel mortgage
must be authorized by holders of two-thirds of outstanding
stock is at least primarily for benefit of stockholders, and
where officers executing such mortgage held at least two-thirds
of outstanding stock, there was substantial compliance with
statute although no formal action of authorization was taken
(2 Comp. Laws 1929, § 10012).

4. SAME—EFFECT OF FAILURE TO COMPLY WITH STATUTE.

Relative to statutory provision requiring consent of holders of
two-thirds of outstanding stock to be filed or recorded with
corporate chattel mortgage, as between parties to mortgage,
compliance therewith is not necessary to its validity.

5. SAME—STOCK AND STOCKHOLDERS—BANKRUPTCY.

Since statutory provision requiring consent of holders of two-
thirds of outstanding stock to execution of corporate chattel
mortgage, and requiring filing or recording with mortgage
certificate of such consent, is for benefit of stockholders, fail-
ure to comply therewith may not be urged by corporation's
trustee in bankruptcy, who represents creditors only.

6. FRAUDULENT CONVEYANCES—CHATTEL MORTGAGES—NOTICE TO
CREDITORS—STATUTES.

Purpose of statute requiring notice to creditors of mortgage on
stock of merchandise or fixtures is for protection of existing,
not subsequent, creditors (2 Comp. Laws 1929, §§ 9548, 9549).

7. SAME—CONSTITUTIONAL LAW—EX POST FACTO LAW—IMPAIRMENT
OF CONTRACT OBLIGATION.

Statutory requirement that notice of mortgage on stock of mer-
chandise or fixtures be given to creditors is not applicable to
mortgage executed and delivered prior to effective date of
said statute, but not filed until afterward, since to hold other-
wise would render it operative *ex post facto*, and also impair
contract obligation in violation of Constitution (article 2, § 9).

8. CHATTEL MORTGAGES—FORECLOSURE SALE—IRREGULARITIES.
   Cancellation of chattel mortgage sale is not justified because of
   claimed irregularities, where it is not suggested that larger
   bid on resale could be secured, or that rights of creditors have
   been prejudiced thereby.

Appeal from Kent; Brown (William B.), J.  Submitted January 10, 1933.  (Docket No. 77, Calendar No. 36,991.)  Decided March 2, 1933.

Bill by Fred G. Timmer, trustee in bankruptcy of Alton F. Petrie, individually and doing business as Pierson Elevator Company, against C. L. Crimmins and O'Donald State Bank to set aside two chattel mortgages.  From decree for plaintiff as to one mortgage and for defendants as to the other, all parties appeal.  Reversed, and bill dismissed.

*Linsey, Shivel & Phelps,* for plaintiff.

*Travis, Merrick, Johnson & McCobb,* for defendants.

NORTH, J.  Plaintiff, trustee in involuntary bankruptcy of Alton F. Petrie, individually and doing business as the Pierson Elevator Company, filed this bill in the circuit court of Kent county for the purpose of securing cancellation of two chattel mortgages and setting aside the foreclosure sales of the property covered by the respective mortgages.  One of these mortgages covered the merchandise, fixtures, and bills receivable of a general store owned and operated by Petrie; and the other covered elevator buildings (which stood on land leased of the Pennsylvania Railroad Company), equipment, stock, and bills and accounts receivable.  Each mortgage covered subsequently-acquired stock, equipment,

bills receivable, etc. The circuit judge decreed the first of these mortgages valid and refused cancellation; but he held the other mortgage invalid, and as to it granted the relief sought. All parties have appealed.

*Store Mortgage.* The objections urged by plaintiff against the chattel mortgage on the general store, as set forth in the supplemental notice of appeal, are: (1) Failure to comply with the provisions of the statute (3 Comp. Laws 1929, §§ 13427, 13428) providing for filing annual renewal affidavits; and (2) that the sale to defendants on foreclosure was irregular.

If we assume, as asserted by plaintiff, that the filing of the first affidavit of renewal was not in exact accord with statutory requirements, the undisputed proof as to both the store mortgage and elevator mortgage is that there were properly filed affidavits of renewal for the year in which the bankruptcy proceeding was instituted and also for the preceding year. Further, 3 Comp. Laws 1929, § 13427, contains the following:

"Provided, that such affidavit being made and filed before any purchase of such mortgaged property shall be made, or other mortgage received or lien obtained thereon in good faith, shall be as valid to continue in effect such mortgage, as if the same were made and filed within the period as above provided."

There is no showing in this record that any of the creditors represented by the trustee in bankruptcy claim as purchasers or mortgagees of any of the mortgaged property, or that they have been prejudiced in any way by the alleged failure to file renewal affidavits. Plaintiff is not entitled to relief on the ground that the affidavits of renewal were not prop-

erly filed. The claim that the foreclosure sale under the store mortgage was irregular will be considered later in connection with the same claim as to the sale under the elevator mortgage. The circuit judge reached the right conclusion in holding that the chattel mortgage on Petrie's general store was valid.

*Elevator Mortgage.* This chattel mortgage given to defendants by the corporation was held invalid by the circuit judge on two grounds: First, that it was given after the expiration of the corporation's franchise, and, second, on the ground of noncompliance with the statute requiring consent of stockholders and the filing of evidence of such consent.

The 10-year period for which the Pierson Elevator Company was incorporated expired June 10, 1927. This chattel mortgage was given June 10, 1929. Neither the mortgagor nor the mortgagees were aware of this fact at the time the mortgage was given. Petrie first learned of it when so advised by the secretary of State, in April, 1931; and the mortgagees were not advised until after the bankruptcy proceedings were instituted January 18, 1932. After Petrie received the notice from the secretary of State, he seems to have assumed that he could rightfully carry on the business individually and continue the use of the corporate name; and as a matter of fact he did continue the elevator business in this manner up to the time he was forced into bankruptcy. Notwithstanding its charter expired June 10, 1927, the corporation filed its annual reports with the secretary of State and paid its annual fees in 1927, 1928, 1929, and 1930. The statute (2 Comp. Laws 1929, §§ 9971, 9975) automatically extends the franchise of the corporation for three years after expiration of its corporate term as fixed by its articles of association, within which extension period

application may be made for a renewal of the corporate charter and within which extension period the corporation may carry on such business as is incident to winding up its affairs. It was during this extension period and more than two and a half years before the bankruptcy proceeding that this chattel mortgage was given. No one questions that the parties to the transaction acted in good faith. Admittedly this mortgage was given to secure payment of then-existing indebtednesses of Petrie to defendants, to secure payment of future advancements, and also in connection with Petrie's contingent indebtedness to defendants as an indorser on notes which they had discounted for him. The mortgage was placed on record both with the township clerk and the register of deeds, and from year to year renewal affidavits were filed. Both Petrie and defendants at all times believed that to the extent of this mortgage defendants were secured creditors. Shortly before the bankruptcy proceeding defendants took possession of the chattel mortgaged property, advertised a chattel mortgage sale, bought the property at the sale for a bid of $6,000, and defendants have since continued in the possession and operation of the elevator business.

The attack of the trustee in bankruptcy upon this mortgage is not supported by any equitable considerations, but instead is based primarily upon alleged failure to comply strictly with statutory requirements. The actual controversy is between the unsecured creditors of Petrie who have filed claims in the bankruptcy proceeding and these defendants who in the regular course of business took this chattel mortgage long prior to the bankruptcy. The inequity of plaintiff's suit is all the more pronounced by reason of the fact that these defendants have not

filed claims in the bankruptcy court and probably could not do so at this late date. The result is 'that plaintiff by this suit in equity seeks to turn the mortgaged property over to Petrie's other creditors to the exclusion of defendants.

At the time of giving the mortgage, the mortgagor, Pierson Elevator Company, was actively carrying on its business in its corporate capacity. All who were dealing with it at that time seemed to have recognized it as a corporation. This was true of defendants. Even the State, by accepting the annual reports and fees, acknowledged the extension of the corporate franchise. As noted above, all the parties to the mortgage acted in good faith. The consideration for which the mortgage was given evidently went into the corporation's business, at least there is no showing to the contrary. Nor is there any showing that giving this mortgage was in any way a fraud upon any of the creditors whom plaintiff represents. Surely neither the corporation nor Petrie by whom it was controlled could successfully question the validity of this mortgage in a court of equity. Under the facts here involved, the trustee should be held to stand in the place of the mortgagor and not permitted to void the mortgage notwithstanding it was given after the expiration of the 10-year corporate period fixed in the articles of association. To hold otherwise would be highly inequitable.

The other ground upon which the circuit judge held the mortgage invalid was that its execution does not appear to have been authorized by the holders of two-thirds of the outstanding stock of the corporation, and that the certificate of such authorization was not filed with the mortgage. (See 2 Comp. Laws 1929, § 10012.) The corporation was controlled by Petrie. Both he and his wife were

stockholders and served as two of its three officers. He was president, she secretary-treasurer. The total outstanding stock was 2,000 shares. Of this Petrie alone held 1,625 shares, which was over 80 per cent. of the total. Both he and his wife signed this chattel mortgage in their official capacity. While there has been much difference of judicial opinion as to whether the above-cited statutory provision is for the benefit of stockholders or the benefit of creditors or for both (see *In re Progressive Wall Paper Corp.*, 230 Fed. 171 [37 Am. Bankruptcy Rep. 207]), we are committed to the holding that at least primarily the provision is for the benefit of stockholders, and if the stockholders who execute such a mortgage hold at least two-thirds of the outstanding stock there is substantial compliance with the statute.

"The purpose of the statute is to protect *stockholders. * * * The mortgage was executed by the usual officers, the president and secretary of the Farrell Products Company, and carried their affidavits of authority. The claim that the mortgage was invalid was an affirmative defense. 14A C. J. p. 709; *Earle v. National Metallurgic Co.*, 77 N. J. Eq. 17 (76 Atl. 555). The defendants had the burden of proving that the persons executing the mortgage, Casey and Coble, were not the owners of two-thirds of the Farrell stock, either directly or through ownership of Tri-Plex shares." *Loupee v. Railroad Co.*, 243 Mich. 144, 149.

It may be added in this connection that Mr. Petrie testified:

"Prior to the time that this chattel mortgage was executed, all three officers of the corporation talked it over. I would not say it was a regular meeting; never put it in a minute book. I don't recall that it was ever reduced to writing anywhere."

Relative to this statutory provision requiring the consent of the stockholders to be filed or recorded with the chattel mortgage, in *Grand Victory Theatre* v. *Soloman,* 224 Mich. 451, Mr. Justice McDONALD, after quoting 14A C. J. § 2663, p. 665, said:

"As between the parties to the mortgage, a compliance with this provision is not necessary to its validity."

Since the statutory provision requiring consent of two-thirds of the outstanding stock (except in cases of purchase-price mortgages) and requiring filing or recording with the mortgage a certificate of such consent is for the benefit of stockholders, failure to comply with the statute cannot be urged by plaintiff, who represents creditors only. In any event, the result sought by plaintiff, being based solely upon failure to comply with the statute, is one which, under the circumstances of this case, does not appeal to the conscience of a court in equity. From the foregoing, it follows that we are not in accord with the reasons assigned for holding in the circuit court that the corporate mortgage was invalid.

In addition to the above-considered objections, plaintiff also urges invalidity of this mortgage on the ground that it was given in violation of Act No. 200, Pub. Acts 1929 (2 Comp. Laws 1929, §§ 9548, 9549).\* The purport of this act is indicated by the following:

"SECTION 1. Every mortgage or conveyance intended to operate as a mortgage of the whole or any part of a stock of merchandise or merchandise and fixtures, pertaining to the conducting of said business which shall hereafter be made without notice

---

\* This act has been amended by Act No. 198, Pub. Acts 1931.

to the creditors of the mortgagor as herein provided, shall be void as against *said* creditors."

There are two reasons why plaintiff's contention cannot be sustained: First, it appears from the portion of the act above quoted that its purpose was the protection of creditors who were such at the time the mortgage was given, not subsequent creditors. We find no showing in this record that any of the creditors represented by plaintiff were such at the time the mortgage was given. A second reason which renders plaintiff's contention untenable is that Act No. 200 did not become effective until August 28, 1929. While this chattel mortgage was not filed until shortly subsequent to August 28, 1929, it was executed and delivered to defendants on June 10, 1929, which was several months prior to the effective date of the act. As between the mortgagor and the mortgagee, it was an existing contract as soon as consummated. Legislation which became effective at a later date could not invalidate this contract. To hold otherwise would be an attempt to render it operative *ex post facto,* and also as impairing a contract obligation in violation of the Constitution. Michigan Constitution, art. 2, § 9.

As to claimed irregularities incident to the chattel mortgage sale under the elevator mortgage and also the sale under the store mortgage, we find nothing in the record which would justify cancellation of such sales. Plaintiff makes no claims of actual prejudice to the rights of the creditors whom he represents. His complaint is that, by reason of defendants holding possession as purchasers at the chattel mortgage sales, plaintiff as trustee in bankruptcy was prevented from taking possession of the mortgaged property. But it is not even suggested

that a larger bid could be secured on resale. However, plaintiff asserts that since defendants bid $6,000 on the foreclosure of the elevator mortgage, and the mortgagor was then indebted to the bank for only $5,207.66, there should be an accounting to plaintiff for the balance. In so asserting, plaintiff overlooks the fact that the corporation's chattel mortgage not only secured its indebtedness to the bank but also to the defendant Crimmins. At the time of foreclosure the elevator company was not only indebted to the bank in the amount above noted, but also to Crimmins personally and for an amount much in excess of that for which plaintiff asks an accounting. A careful consideration of this record in connection with the questions raised brings us to the conclusion that the portion of the decree entered in the circuit court holding that the chattel mortgage given by the Pierson Elevator Company was invalid must be reversed.

A decree may be entered in this court dismissing plaintiff's bill of complaint, with costs of both courts.

McDONALD, C. J., and CLARK, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.